**BOARD OF DIRECTORS, WATER'S EDGE, a Condominium Unit Owner's Assoc., Plaintiff,**

v.

**The ANDEN GROUP, Defendant/Third–Party Plaintiff,**

v.

**HOOVER TREATED WOOD PRODUCTS, INC., et al., Defendants.**

**Civ. A. No. 89–1063–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Feb. 14, 1991.

Robert G. Watt, McLean, for plaintiff.

John J. Fisher, Odin, Feldman & Pittleman, Fairfax, Va., for The Anden Group.

Robert L. Ellis, Fairfax, Va., for defendant Hoover Treated Wood.

Bernard DiMuro, DiMuro, Ginsberg & Lieberman, Alexandria, Va., for fourth-party defendant Curtis Lumber.

Charles E. Gallagher, Jr., Upper Marlboro, Md., for defendant Fort McHenry Lumber Co., Inc.

Paul Terpak, Blankenship & Keith, Fairfax, Va., for third-party-defendant Maryland Lumber Co.

Edward H. Grove, III, Fairfax, Va., for Osmose Wood Preserving, Inc.

Randolph Frostick, Manassas, Va., for Lowe's Home Centers, Inc.

## MEMORANDUM OPINION

ELLIS, District Judge.

### Introduction

Plaintiff's post-judgment motion for litigation costs raises questions as to whether plaintiff may recover costs associated with (i) deposition transcripts not used at trial, (ii) transcripts of pretrial proceedings, and (iii) fees for copies and exemplification. Deposition transcript costs are awarded in light of this circuit's rule that where there is a merits disposition short of trial such costs are recoverable to the victor where the depositions, though not used at trial, appeared reasonably necessary for preparation for trial at the time taken. Costs for transcripts of pretrial proceedings, exemplification, and copying are granted with the modifications described in this opinion.

### Factual Background and Proceedings

Plaintiff, the Board of Directors of Water's Edge, a condominium unit owners' association ("Water's Edge"), filed a complaint on July 24, 1989, charging defendant, The Anden Group ("Anden"), with having improperly constructed certain roofs at Water's Edge. The complaint alleged that leaks existing in the roofs at Water's Edge were "caused by construction and/or design defects attributable to Anden's construction of the Water's Edge roofs." Complaint at ¶ 12. Anden denied allegations of defects in the roofing, noting that it could neither admit nor deny these allegations without more information from Water's Edge. Further discovery between Anden and Water's Edge took place in October and November. This discovery clarified the fact that one of Water's Edge's claims was that the roofs were defective because certain fire retardant treated plywood ("FRT plywood") used by Anden to construct the roofs had been improperly manufactured and was itself defective. On December 6, 1989, Anden moved for leave to file a third-party complaint against numerous third-party defendants, including Hoover Treated Wood Products, Inc. ("Hoover"), the manufacturer of the FRT plywood, and Maryland Lumber Company ("Maryland Lumber"), a major supplier of the FRT plywood.

Trial commenced on April 23, 1990. On that day, Anden stipulated that most of the roofing at Water's Edge would have to be replaced and that Anden was liable for the cost of such replacement. The only issues remaining between Water's Edge and Anden were whether Anden was also liable for replacing five small items, including chimney caps, gutters and waterspouts, and the total amount of damages. The trial proceeded on these issues to a jury verdict awarding Water's Edge $460,000. After this trial, Anden and the third-party defendants proceeded to trial on the issue of whether the deterioration of the FRT plywood in the roofs was attributable to defective plywood or Anden's alleged faulty construction practices. Before completion of this second trial, the defendants reached a settlement as to liability. On May 4, 1990, Water's Edge filed its Motion for Award of Litigation Costs Incurred to Prove Failure of Fire–Retardant–Treated Plywood. In the motion, Water's Edge seeks attorney's fees as well as costs, based on numerous legal theories. The Court denied the motion on June 22, 1990, but gave Water's Edge leave to renew the motion once certain proceedings between Anden and third-party defendants Hoover and Maryland Lumber concerning Rule 11 sanctions had been completed. A hearing on Rule 11 sanctions was held on December 3 and 4, 1990, during the course of which Anden reached a settlement with Hoover and Maryland. Water's Edge renewed its motion for attorney's fees, which motion will be disposed of in a separate memorandum opinion. Water's Edge also has filed

a Bill of Costs setting forth specific expenses other than attorney's fees. Disputes over the Bill of Costs have been fully briefed and argued, and the matter is ripe for disposition.

### Analysis

Rule 54(d), Fed.R.Civ.P., provides, in relevant part, that "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs...." Congress has made express provision for the taxing of costs in 28 U.S.C. § 1920, which governs here and is set out in the margin.[1] Water's Edge has submitted a Bill of Costs that, in summarized form, contains the following items:

(1) Fees of the clerk ................... $120.00
(2) Fees for service of summons and complaint ........................... $65.00
(3) Fees of the court reporter for transcripts of depositions, pre-trial and trial proceedings ................... $7,694.00
(4) Fees for witnesses .................. $260.00
(5) Fees for exemplification and copies of papers ......................... $4,353.03
(6) Costs incident to taking of depositions ............................... $253.00
(7) Other Costs (trial subpoenas) ........ $295.00

The Anden Group makes no objection to the costs set forth in items (1), (2), (4), (6) and (7), and the Court finds that those costs should be taxed. Anden does object to the recovery of costs for transcripts of depositions and of pretrial proceedings claimed under item (3), and to certain exemplification and duplication costs claimed under item (5). The Court reviews these costs seriatim.

### I. Transcripts of Depositions

■ Anden contends that the standard governing the taxing of deposition costs is that set forth in *Sperry Rand Corp. v.*

1. § 1920. Taxation of Costs.
A judge or clerk of any court of the United States may tax as costs the following:
(1) Fees of the clerk and marshall;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

*A–T–O, Inc.,* 58 F.R.D. 132 (E.D.Va.1973). There, the court observed:

> Recent decisions concerning the taxability as costs of deposition transcripts reach uniform results. If the depositions were needed merely for discovery, their expense should be borne by the party taking them, as incidental to normal trial preparation. If, however, the deposition transcripts were actually introduced at trial or used for impeachment purposes, then the Court can conclude that they were "necessarily obtained for use in the case."

*Id.* at 138–39, quoting 28 U.S.C. § 1920(2). Anden argues that because the deposition transcripts at issue were not introduced into evidence or used to impeach at trial, their costs should not be taxed. But Anden's reliance on *Sperry* is misplaced. *Sperry,* to begin with, is distinguishable on its facts. Unlike the instant case, *Sperry* involved a matter that had gone to trial. Moreover, the *Sperry* court found that each deposition transcript for which Sperry sought costs "was used at trial." *Id.* at 139. Not presented in *Sperry* is the issue presented here: whether deposition costs may be recovered where there is a merits disposition short of a full trial. Beyond this distinction, Anden also overlooks the fact that cases in this District subsequent to *Sperry* have been less than uniform on this issue. *Compare Marcoin, Inc. v. Edwin K. Williams & Co.,* 88 F.R.D. 588, 592 (E.D.Va.1980) (following *Sperry* in case that went to trial and where all deposition transcripts for which costs were sought had been used at trial), *and Sun Publishing Co., Inc. v. Mecklenburg News, Inc.,* 594 F.Supp. 1512, 1524 (E.D.Va.1984) (applying *Sperry* in case that went to trial and disallowing costs of depositions not used at

(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

trial) *with Principe v. McDonald's Corp.*, 95 F.R.D. 34, 37 (E.D.Va.1982) (holding that trial court may tax "all reasonable expenses incurred by prevailing party under the five headings listed in § 1920" and allowing, in case that went to trial, costs for depositions "neither designated nor used" at trial).

More importantly, the Fourth Circuit, since *Sperry*, has held, in a case involving a directed verdict for defendant at the close of the plaintiff's case, that a "district court should award costs when the taking of a deposition is reasonably necessary at the time of its taking." *LaVay Corp. v. Dominion Federal Savings & Loan Association*, 830 F.2d 522, 528 (4th Cir.1987), *cert. denied*, 484 U.S. 1065, 108 S.Ct. 1027, 98 L.Ed.2d 991 (1988). The Fourth Circuit specifically disapproved, at least under the facts of *LaVay* where no full trial had occurred, of this District's "practice of allowing costs only for depositions admitted at trial." *Id.* It therefore remanded the case for consideration of "whether these costs were reasonably necessary *for preparation for trial* at the time they were taken." *Id.* (emphasis added). In so holding, the *LaVay* court brought the Fourth Circuit, at least where there is a merits disposition short of full trial, into agreement with numerous other Circuits that have held that, whether or not there has been a full trial, deposition costs should be taxed where the depositions were "necessarily obtained for use in the case" at the time they were taken.[2] The broad language of *LaVay* suggests that the Fourth Circuit also intended the standard it propounded to apply even in cases that go to trial. *Sperry* and *Sun Publishing*, to the extent they hold that deposition transcripts must be introduced at trial or used for impeachment before related costs can be taxed, appear to have been overruled *sub silentio*. This is a sensible conclusion, given that it seems fair to determine the need for a deposition by looking at the factors known at the time of its taking, whether or not a case ultimately has a full trial. Events occurring after the taking of a deposition, and at trial, may be considered in the event they shed light on whether a party should have known that a deposition was unnecessary at the time of its taking. But omniscience should not be the standard; subsequent events are relevant only to the extent they indicate what was known or should have been known at the time of the taking of the deposition.[3] In any event, *LaVay* plainly governs here because Anden stipulated liability for the bulk of the claim on the first day of trial and hence a full trial never occurred.[4]

■ Needless to say, no single, simple standard has been developed by courts to demonstrate whether depositions were reasonably necessary for preparation for trial

**2.** See *In re Air Crash Disaster at John F. Kennedy International Airport on June 24, 1975*, 687 F.2d 626, 631–32 (2d Cir.1982) (holding in case that went to trial that costs may be recovered for depositions not used by plaintiffs at trial); *Nissho–Iwai Co. v. Occidental Crude Sales, Inc.*, 729 F.2d 1530, 1553 (5th Cir.1984) (same); *Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir.1989) (same); *State of Illinois v. Sangamo Construction Co.*, 657 F.2d 855 (7th Cir.1981) (same); *Koppinger v. Cullen–Schlitz & Associates*, 513 F.2d 901, 911 (8th Cir.1975) (same); 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 54.77[4] at 54–418 (2d ed. 1990) ("it is well settled that the district court has the *power* to include such expenses in an award of costs, even if the deposition was not used at the trial"); *see also Hudson v. Nabisco Brands, Inc.*, 758 F.2d 1237, 1243 (7th Cir.1985) (observing in case where court granted summary judgment that "the generally accepted view, and the one adopted by this circuit, is that introduction of a deposition at trial is not a prerequisite for finding that it was necessary to take the deposition"), *overruled in part on other grounds, Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 261 n. 5 (7th Cir.1989); *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475 (9th Cir.1983) (holding in case where court granted motion for involuntary dismissal that costs of depositions of witnesses to be called at trial could be recovered).

**3.** See *Hudson v. Nabisco Brands, Inc.*, 758 F.2d at 1243 (stating "[t]he determination of necessity must be made in light of the facts known at the time of the deposition, without regard to intervening developments that later render the deposition unneeded for further use").

**4.** A case cited with approval by the *LaVay* court is *Schmid v. Frosch*, 609 F.Supp. 490, 492 (D.D.C.1985). *Schmid* involved a case settled on the eve of trial with an agreement which afforded plaintiff substantial relief, and is virtually identical in posture to this case.

at the time they were taken. For various reasons, courts have determined that depositions not introduced or employed for impeachment at trial were nevertheless "necessarily obtained" for preparation for trial.[5] Some courts have gone so far as to say that

> A deposition taken within the proper bounds of discovery, even if not used at trial, will normally be deemed to be "necessarily obtained for use in the case," and its cost will be taxed unless the opposing party interposes a specific objection that the deposition was improperly taken or unduly prolonged.

*Federal Savings and Loan Insurance Corp. v. Szarabajka,* 330 F.Supp. 1202, 1210 (N.D.Ill.1971); *accord Jeffries v. Georgia Residential Finance Authority,* 90 F.R.D. 62, 63 (N.D.Ga.1981), *aff'd,* 678 F.2d 919 (11th Cir.1982), *cert. denied,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982). Numerous courts, however, including this District in the *Principe* case, have recognized that where a deposition was obtained for "mere discovery" or for "convenience of counsel," the costs of such deposition should not be taxed. *Principe v. McDonald's Corp.,* 95 F.R.D. at 37. But the restriction on costs associated with depositions obtained for "mere discovery" appears to be on the wane. *See* 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 54.77[4] at 54–424 (2d ed.1990). In any event, a district court's analysis of this issue involves a factual inquiry the results of which are not overturned unless the district court abuses its discretion.[6] With these principles in mind, the Court turns next to an examination of the depositions underlying the costs claimed by Water's Edge to determine whether they "were reasonably necessary for preparation for trial at the time they were taken." *LaVay,* 830 F.2d at 528.

■ Water's Edge seeks costs associated with the depositions of twenty-two individuals. Twelve of the depositions appear to have been taken by Water's Edge, and ten by Anden. A split in the authorities exists with respect to recovering costs of copies of deposition transcripts taken by another party. Many cases hold that such copies are merely "for the convenience of counsel" because counsel may use the official transcript on file with the clerk of court; other cases, fewer in number but more recent, find that such copies are necessary for trial preparation. *See* 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 54.77[4] at 54–428 (2d. ed. 1990). The Court is of the view that in general, and particularly in this case, "recourse by counsel to an original on file with the Clerk's Office would have been wholly insufficient." *Principe v. McDonald's Corp.,* 95 F.R.D. at 37. "Trial preparation requires counsel to *work* with a deposition and not merely to view it." *Id.* Thus, Water's Edge may recover costs associated with one copy of a deposition taken by Anden, as well as with an original transcript and one copy of a deposition taken by Water's Edge. Further, Anden does not object to costs associated with four of the depositions, observing that Water's Edge used these deposition transcripts to attempt to impeach hostile witnesses at the abbreviated trial. Costs associated with these four depositions will therefore be granted.[7]

5. *See, e.g., Schmid v. Frosch,* 609 F.Supp. at 492 (allowing plaintiff to recover costs associated with defendant's depositions of plaintiff's experts where case settled before trial); *Neely v. General Electric Co.,* 90 F.R.D. 627, 630 (N.D.Ga. 1981) (permitting, after jury verdict for plaintiff, recovery of costs of deposition of employees of objecting defendant's co-defendant where employees of co-defendant were beyond court's subpoena power).

6. *Sales v. Marshall,* 873 F.2d at 120 ("[a]n allowance of deposition costs is reviewed for an abuse of discretion"); *Furr v. AT & T Technologies, Inc.,* 824 F.2d 1537, 1550 (10th Cir.1987) (same), *reh'g denied,* 842 F.2d 253 (1988); *In re Air Crash Disaster,* 687 F.2d at 629, quoting *Mid–Hudson Legal Services, Inc. v. G & U, Inc.,* 578 F.2d 34, 38 n. 3 (2d Cir.1978) (the rule and the various statutory provisions relating to the awarding of costs leave the taxation of costs to the discretion of the district court, with that court's decision to be upset "only in the event of an abuse of that discretion").

7. The four deponents were Bryant, Rosoff, Parsons and Downey.

■ Anden opposes Water's Edge's recovery of costs associated with the remaining eighteen depositions. First, Anden objects to the cost of depositions taken by Water's Edge of five past or present employees of Anden.[8] Anden argues that Water's Edge did not introduce these depositions at trial or use them to impeach witnesses; nor did any party call these individuals as witnesses, except for Emanual, who was called by Anden. As noted, however, the focus should be on whether the depositions were "necessary for preparation for trial *at the time they were taken.*" *LaVay*, 830 F.2d at 528 (emphasis added). It appears they were. Anden and Water's Edge each listed three of the deposed individuals on witness lists submitted by the parties on December 21, 1989 and January 18, 1990, after the taking of the depositions. Moreover, Water's Edge asserts that all five had knowledge "critical to Anden's liability and defenses thereto, e.g. notice of breach, manifestation of breach." This assertion has not been persuasively disputed. Given these facts and circumstances, and in view of the general complexity of this case, which involved one of the first trials pertaining to the alleged defectiveness of a certain type of FRT plywood, the Court finds that these depositions were reasonably necessary for preparation for trial when taken.

■ Costs associated with the three remaining depositions taken by Water's Edge should also be taxed. Krueger and Connolly were experts retained by Anden to testify as to the defective nature of the FRT plywood. Anden intended to use such testimony against third-party-defendant suppliers and manufacturers of the plywood. Water's Edge observes that portions of one of the depositions were submitted as its pre-filed Exhibit 93, and that both depositions were necessary to memorialize the experts' testimony in case a settlement between Anden and the third-party defendants caused the testimony to be unavailable. In view of these facts and the complexity of the case, the taking of these experts' depositions was reasonably necessary to prepare for trial. Likewise, the taking of the deposition of Deveraux, the corporate designee of the architecture-engineering firm which designed the Water's Edge project, was reasonably necessary for preparation for trial. A prime contention of Water's Edge's was that Anden's construction of the roofs was faulty. Water's Edge could reasonably assume that Deveraux would support a claim by Anden that the construction was not faulty and that proper trial preparation mandated obtaining Deveraux's deposition.

■ Next, Anden objects to the award of costs to Water's Edge for depositions taken by Anden. Specifically, Anden objects to costs associated with copies of the depositions of Swann, the President of the Water's Edge unit owner's association, LaMontagne, who performed work on the roofs at Water's Edge's request, Shuffleton, Water's Edge's liability expert, and Smith, Water's Edge's cost or damage expert. Anden claims that because these deponents were Water's Edge's witnesses, transcripts of the depositions were not needed for introduction at trial or for the impeachment of witnesses. Such transcripts, however, were reasonably necessary for trial preparation as they would be used by Water's Edge in choosing the direction in which the testimony of its own witnesses should go and in limiting its witnesses' exposure to impeachment. *See, e.g., Nissho–Iwai Co. v. Occidental Crude Sales*, 729 F.2d at 1554; *Schmid v. Frosch*, 609 F.Supp. at 492. These costs should therefore be taxed.

■ Finally, Anden objects to costs associated with copies of six depositions conducted by Anden of various third-party defendant witnesses who gave testimony supporting Water's Edge's view that Anden was liable for the roof problems. Kozak and Dozier were officers of third-party suppliers who were taking the position that Anden's construction practices were the cause of the roof problems. Wangel, Tolles, and Dworkin were expert witnesses hired by third-party suppliers to inspect

---

8. The depositions are of Joyce, Emanual, Cloak, Anderson, and Cesnauskis.

roof construction defects allegedly attributable to Anden. Kolker was a corporate designee of third-party defendant Maryland Lumber Co. who provided testimony supportive of a claim of construction defects. Anden maintains that these depositions were purely for discovery and not necessary for trial since Water's Edge had no claims directly against any of the third-party defendants and because all of the deponents gave testimony favorable to Water's Edge's claim of construction defects. Water's Edge counters that it was necessary to memorialize this testimony as these witnesses could have become hostile or unavailable at any time in the event of a settlement or joining of forces among the defendants. The Court concurs and finds that copies of these depositions were reasonably necessary for preparation for trial. In sum, the Court finds that Water's Edge should be awarded all costs for deposition transcripts and deposition copies listed in its Bill of Costs.

## II. Transcripts of Pretrial Proceedings

■ Water's Edge requests costs totaling $450.75 for transcripts of five pretrial hearings. The "basic standard" to be applied in determining whether to tax the cost of a transcript is whether the transcript "was necessarily obtained for use in the case, that is whether it was necessary to counsel's effective performance and proper handling of the case." *Marcoin, Inc. v. Edwin K. Williams & Co.*, 88 F.R.D. at 590 (finding that costs of pretrial transcript of hearing on plaintiff's motion to compel answers to interrogatories should be taxed). Numerous and varied factors may indicate when a transcript of a pretrial proceeding is necessary to the proper handling of a case; for example, where

> the pretrial proceedings were of substantial importance to both parties ... [where] throughout the pretrial confer-

ences the parties made concessions to one another, reached agreements and stipulations ... while the Court ruled on motions, objections, and proposals of the parties all to the end that the litigation be shaped fairly ... [t]here is no question that the transcript of the pretrial proceedings was reasonably necessary for an effective and proper presentation of the case.

*Principe v. McDonald's Corp.*, 95 F.R.D. 34, 36–37 (E.D.Va.1982). The transcripts at issue must therefore be reviewed to determine whether they were "necessary to counsel's effective performance and proper handling of the case." *Marcoin*, 88 F.R.D. at 590.[9]

The first transcript is of a September 29, 1989 hearing during which Anden's various Rule 12 threshold motions were denied. The second transcript is of a hearing during which certain of Water's Edge's objections to Anden's discovery requests were overruled while portions of Water's Edge's motion to compel answers to interrogatories were granted. The subsequent hearing order notes that certain objections "were resolved" during the hearing and that certain aspects of the motion to compel were granted "as modified in open court." Water's Edge subsequently unsuccessfully appealed this order, and Anden filed a motion seeking "clarification" of this order and the issues resolved at the hearing. The order indicates that numerous issues affecting the course of future discovery were agreed upon and resolved during the hearing. Significantly, however, the order does not itself summarize the agreements reached during the hearing. The third transcript is of a November 21, 1989 hearing during which a motion to compel filed by Water's Edge was granted and motions for clarification and to compel filed by Anden were also considered. The fourth transcript is of a December 1, 1989

---

9. Counsel for Anden contends that *Sperry* established a rigid two-part test for the award of pretrial hearing transcript costs: such costs should only be awarded if (i) a pretrial hearing greatly clarified issues for trial and (ii) the hearing was not clearly recounted in a subsequent order. *See* 58 F.R.D. at 138. A close reading of

*Sperry* reveals that it did not employ such a rigid test. *See id.* (concluding that such costs should be taxed because "[t]he trial of the action was both lengthy and complex, and the transcripts of the hearings held were *reasonably necessary to prepare for it*") (emphasis added).

hearing during which Anden's Motion to Depose Expert Witnesses of Plaintiff was granted. The fifth and final proceeding was a December 8, 1989 hearing at which Anden's motions to compel discovery and for joinder of third parties and Water's Edge's motion for extension of time for discovery were granted. The order granting the motions states that the "parties hereto have resolved their differences, subject to certain conditions agreed upon by the same as to the relief sought by these motions." But the order does not itself identify the conditions.

With the exception of the transcript of the fourth hearing, all of the transcripts of pretrial proceedings were "necessary to counsel's effective performance and proper handling of the case." The specific facts of this case show that "the pretrial proceedings were of substantial importance to both parties. Without question the work done by counsel at and in preparation for pretrial conferences saved ... trial time." *Principe v. McDonald's Corp.*, 95 F.R.D. at 36. The hearing transcripts were necessary as important agreements and stipulations reached in the course of the hearings were not set forth in subsequent orders. Moreover, the clarification of issues that took place during these hearings doubtless contributed to the stipulation concerning Anden's liability that materially shortened the first trial. The record indicates, however, that the issues were less numerous at the December 1, 1989 proceeding, and the order for that hearing indicates simply that Anden's motion to depose expert witnesses of Water's Edge was granted, without indicating that the motion was qualified by agreements or conditions established during the hearing. From the record, the Court cannot conclude that a transcript of this hearing was necessary to counsel's future performance and handling of the case. The cost of this transcript was $58.00. Water's Edge's request for pretrial transcript costs will therefore be reduced from $450.75 to $392.75.

III. *Exemplification Costs*

Water's Edge seeks exemplification costs associated with (i) reproducing a video tape exhibit and certain photographic exhibits and (ii) "blow-ups" or enlargements of certain photographic exhibits. The reproduction costs total $641.16 while the enlargement costs total $2,030.44. For the following reasons, the reproduction costs should be taxed while the enlargement costs should not.

■ Section 1920(4) provides that a court may tax "[f]ees for exemplification and copies of papers necessarily obtained for use in the case." "The term 'Copies of papers' has been given a broad reading to include maps, charts, graphs, photographs, motion pictures, photostats and kindred materials when necessarily obtained for use in the case...." 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 54.77[6] at 458 (2d ed. 1990). Hence, costs for copies of exhibits may be awarded where such copies were "necessarily obtained for use in the case." *Scroggins v. Air Cargo, Inc.*, 534 F.2d 1124, 1133 (5th Cir.1976), *reh'g denied*, 540 F.2d 1085; *see also Principe v. McDonald's Corp.*, 95 F.R.D. at 37 (without duplication of exhibits for members of the jury, "many aspects of the trial would have been incomprehensible to the jury"). However, in applying Section 1920(4) to items such as charts, models, video tapes and photographs, a court must heed the admonition of the Supreme Court that "the discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute." *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964); *accord Wahl v. Carrier Manufacturing Co., Inc.*, 511 F.2d 209, 217 (7th Cir.1975).

■ The Court finds that the reproductions of the video tape and the photographs were "necessarily obtained for use in the case." The video tape presents Water's Edge's chief expert witness inspecting the roof and pointing out the evidence allegedly establishing Anden's liability. Prepared to make Water's Edge's case more intelligible to the jury, the video served that function, thereby saving trial time and

aiding the jury. Water's Edge seeks only the costs of copies made of the video tape for the numerous third-party defendants and for use in court. Costs associated with planning and researching the contents of the tape are not sought. The photographs were intended to show the jury the condition of the roof and the existence of construction defects. Water's Edge seeks costs for reproducing the photographs for use in court and for Anden and third-party defendants. The above items were necessarily obtained for use in the case and the cost of copying them should therefore be taxed.

It is otherwise with the enlargement of photographs. Water's Edge seeks $2,030.44 for enlargements. The invoices submitted with this item indicate that more than thirty enlargements were made and many, if not all, were dry-mounted. The invoices also indicate that the size of the enlargements was substantial.[10] Based on the evidence before it and its knowledge of the issues involved in this case, the Court cannot conclude that the making of these enlargements was necessary.[11] It appears, for example, that the video tape described

above and other evidence in the case would suffice as exhibits to show the jury the nature of construction at Water's Edge. Even if this were not the case, no persuasive reason was given for the number of photographs enlarged or the size of the enlargements. Moreover, the Court is mindful of the admonition in *Farmer v. Arabian American Oil Co.*, 379 U.S. at 235, 85 S.Ct. at 416, to tax costs "sparingly" for items not specifically allowed by statute. The enlargement costs will therefore be disallowed.[12]

## IV. Duplication Costs

■ Water's Edge seeks costs of $1,681.43 for copies of documents. Fees for "copies of papers" may be recovered if the papers were "necessarily obtained for use in the case." 28 U.S.C. § 1920(4). In *Sun Publishing Co., Inc. v. Mecklenburg News, Inc.*, 594 F.Supp. 1512, 1524 (E.D.Va. 1984), the court held that "photocopy charges are properly taxable only to the extent that the copies were used as court exhibits or were furnished to the court or opposing counsel." [13] Water's Edge main-

---

**10.** One invoice shows 5 enlargements at 18 × 30, 6 more at 25 × 40, and 1 at 17 × 22. A second invoice indicates 9 reproductions at 25 × 40, 3 at 17 × 22, and 6 at 17 × 28.

**11.** Because the Court does not find that the enlargements at issue were "necessarily obtained for use in the case," it does not reach the issue of whether the cost of enlargements is recoverable under § 1920(4). The few cases located that pertain to enlargements point to the applicability of § 1920(4) without reaching the issue. *See Nissho–Iwai Co. v. Occidental Crude Sales, Inc.*, 729 F.2d at 1553 (holding that where parties agreed to the use of enlarged copies of documents, the enlargements would be treated like any other copies for purposes of taxing costs under § 1920(4)); *Crues v. KFC Corp.*, 768 F.2d 230, 234 (8th Cir.1985) (holding that district court should decide the necessity of enlargements before deciding whether enlargements can be covered by § 1920(4)).

**12.** Some circuits virtually require that parties seek prior court approval, pursuant to Rule 16, Fed.R.Civ.P., before incurring unusually large exemplification costs if they desire an award of such costs. *See, e.g., Studiengesellschaft Kohle v. Eastman Kodak Co.*, 713 F.2d 128 (5th Cir. 1983); *Wahl v. Carrier Manufacturing Co.*, 511 F.2d 209 (7th Cir.1975). Such a rule does not appear to be firmly established in this Circuit.

*But see Specialty Equipment & Machine Corp. v. Zell Motor Car Co.*, 193 F.2d 515, 521 (4th Cir. 1952) (holding that permitting recovery of costs for models was error where no prior court approval had been obtained). The Court need not reach the issue of prior approval, given its ruling.

**13.** While there is no recent Fourth Circuit case applying § 1920(4) to copies of papers, the *Sun Publishing* standard is consistent with those formulated elsewhere. *See State of Illinois v. Sangamo Construction Co.*, 657 F.2d 855, 867 (7th Cir.1981) (holding that the "expense of copying materials reasonably necessary for use in the case are [sic] recoverable costs under 28 U.S.C. § 1920(4)" and upholding district court's award to plaintiff of costs for copying pleadings, correspondence, discovery documents tendered to defendants, documents obtained pursuant to subpoena, and the transcript of a prior criminal trial); *Scroggins v. Air Cargo, Inc.*, 534 F.2d 1124, 1133 (5th Cir.1976) (observing with respect to copies of exhibits and documents submitted to the court that "[i]t was well within the [district] court's discretion to conclude that these copies were 'necessarily obtained for use in the case' "); *A.A. Fressell v. AT & T Technologies, Inc.*, 103 F.R.D. 111, 116 (N.D.Ga.1984) ("[t]his court will only allow photocopying charges that were necessary for discovery and

tains that all of the copying expenses for which it seeks reimbursement are for documents furnished to the Court or opposing counsel. In response to a request from the Court, Water's Edge submitted supplemental information on the documents, indicating their nature and again stating that the copies were produced for submission to the Court or to opposing parties. The amount requested for copies is reasonable given the nature of this case and the number of parties, and the Court is satisfied that the copies were made for submission to the Court and to opposing parties.

### Conclusion

Water's Edge will be awarded the costs it claimed, minus the $2,030.44 claimed for photographic enlargements and the $58.00 claimed for a transcript of the December 1, 1989 hearing. The total awarded costs are therefore $10,951.59 ($13,040.03—$2,088.44). An appropriate order has entered.

for trial presentation and will not allow photocopying charges for the convenience, preparation, research, or records of counsel").