**In re SCHWINN BICYCLE CO., et al., Debtors.**

**SCHWINN PLAN COMMITTEE, Plaintiff,**

**v.**

**TRANSAMERICA INSURANCE FINANCE CORPORATION, Defendant.**

**Bankruptcy Nos. 92 B 22474 through 92 B 22484. Adversary No. 94 A 01618.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

May 5, 1997.

Howard Feller, Dion W. Hayes, McGuire, Woods, Battle & Boothe, Richmond, VA, for Plaintiff.

Mark K. Thomas, Katten, Muchin & Zavis, Chicago, IL, for Plaintiff.

John A. Lipinski, Rooks, Pitts and Poust, Chicago, IL, for Defendant.

Debra Lee Allen, Transamerica Ins. Finance Corp., Towson, MD, for Defendant.

### MEMORANDUM OPINION
### ON TIFCO COSTS

JACK B. SCHMETTERER, Bankruptcy Judge.

Within Debtor's Plan confirmed under Chapter 11 of the Bankruptcy Code, the Schwinn Plan Committee ("Committee") had responsibility for pursuing preferential transfers, liquidating assets, and distributing debtors' assets to creditors.

In this Adversary Complaint, the Committee as Plaintiff sought to set aside preferential transfers. Following trial, judgment was entered for Defendant TransAmerica Insurance Finance Corporation ("TIFCO"), *In re Schwinn Bicycle Co. (Schwinn Plan Committee v. TIFCO)*, 200 B.R. 980 (Bankr. N.D.Ill.1996). TIFCO filed its Bill of Costs totaling $8,611.39 after the time allowed by the local bankruptcy rules. It was filed sixty days after Final Judgment was entered for it in this Adversary proceeding, and thirty days after the deadline imposed by Local Bankruptcy Rule 417(A).

Plaintiff objected to all costs on grounds that the filing was untimely. TIFCO therefore moved under Fed. R. Bankr.P. 9006(b)(1) to extend the time allowed to file its Bill of Costs.

Apart from objecting to the untimely filing and moving to deny all costs for that reason, the Committee objected to individual components of TIFCO's total fees on evidentiary and statutory grounds.

After considering the pleadings and briefs and by separate order, TIFCO's motion to extend the time to file its Bill of Costs is granted, and the Committee's Motion to disallow all costs is denied. Costs will be allowed at least in the amount of $2,369.77, but final ruling as to the amount to be allowed will await supplemental materials from the parties on factual grounds asserted for particular expenses not yet supported adequately by documentation.

### UNDISPUTED BACKGROUND

On October 3, 1994, the Committee filed this Adversary Complaint alleging preferential transfers by Debtor to TIFCO and other defendants. On October 21, 1996, a Final Judgment Order was entered in TIFCO's favor. The Final Judgment Order allowed costs to TIFCO as the prevailing party.

However, TIFCO did not file its Bill of Costs until December 20, 1996. The Plaintiff Committee filed its objection to TIFCO's Bill of Costs and moved for denial of all of TIFCO's costs. Plaintiff's Motion argued under a local bankruptcy rule, that the Bill was filed thirty days late. TIFCO responded with a motion to extend its time to file the Bill of Costs until December 20, 1996, blaming the reason for its tardiness on a consuming litigation project that kept its counsel occupied from October 30 through December 18, 1996. That contention was supported by its counsel's affidavit. The Committee suggests that other counsel could have done the work, and perhaps even affiant.

Plaintiff also objected that certain costs lacked either evidentiary support or statutory authorization.

#### Jurisdiction

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court pursuant to 28 U.S.C. § 157 and Local General Rule 2.33(A) of the United States

District Court for the Northern District of Illinois. Venue lies properly under 28 U.S.C. § 1409. This Adversary constitutes a core proceeding under § 157(b)(2)(F).

## DISCUSSION

Several issues are raised by the motion papers: (1) relationship of national bankruptcy rules to local rules; (2) doctrine of excusable neglect as it applies to late filing of a Bill of Costs; and (3) evidentiary and statutory standards for presentment of particular items in a Bill of Costs.

### National Rules Trump Local Rules

The Committee relies on local Bankruptcy Rule 417(A) to establish a thirty-day deadline for TIFCO to file its Bill of Costs. That Rule provides for no extension possibilities. TIFCO relies on the excusable neglect provisions of Fed. R. Bankr.P. 9006(b)(1) which permits a court to allow tardy filing.

■ Local bankruptcy rules must be read wherever possible to implement rather than contradict national rules. Indeed, when our Local District Bankruptcy Rules were adopted in 1994, the Introduction to them specified that they were intended to be consistent with the national rules. Moreover, those Rules were adopted to govern proceedings only "to the extent they are not inconsistent with ... the Federal Rules of Bankruptcy Procedure...." N.D. Ill. Bankr.R. 101A.

■ Any part of a local rule in conflict with a national rule does not prevail. *Partee v. Buch*, 28 F.3d 636, 637–38 (7th Cir.1994) (finding that a local rule was unenforceable vis-a-vis the national rule because the local rule was more restrictive and, therefore, in conflict with the national rule). *See also Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir.1996) (concerning a dispute over a bill of costs for service-of-process fees and noting in dicta that local rules "may supplement statutory provisions" as long as they are "consistent" with statutory provisions).

■ The Committee relies on Local Bankruptcy Court Rule 417(A):

Within thirty days of the entry of a judgment allowing costs, the prevailing party shall file a bill of costs with the clerk and serve a copy of the bill on each adverse party. If the bill of costs is not filed within the thirty days, costs other than those taxable pursuant to 28 U.S.C. § 1920(1), shall be deemed waived. The court may, *on motion filed within the time provided for the filing of the bill of costs,* extend the time for the filing the bill.

N.D. Ill. Bankr.R. 417(A); (Emphasis added).

TIFCO relies on Fed. R. Bankr.P. 9006(b)(1):

**(b) Enlargement**

(1) In General. Except as provided in paragraphs (2) and (3) of this subdivision, *when an act is required* or allowed *to be done at or within a specified period* by these rules or by a notice given thereunder or *by order of court, the court for cause shown may at any time in its discretion* (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) *on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.*

Fed. R. Bankr.P. 9006(b)(1) (emphasis added).

Local Bankruptcy Rule 417(A) is more restrictive than 9006(b)(1) because 417(A) does not allow for any extension of time after expiration of the thirty-day period. The local Rule must therefore be deemed modified or superseded on that point by the 9006(b)(1) possibility of extension for excusable neglect. *See Partee v. Buch*, 28 F.3d at 637–38. Rule 9006(b)(1) applies by its terms to this situation because Local Bankruptcy Rule 417(A) is a rule ordered by the District Court; therefore, it is the same as an "order of court" covered by 9006(b)(1).

TIFCO's motion to extend the time of its filing for its Bill of Costs can therefore be allowed if TIFCO's tardiness fits under the standards of excusable neglect.

### Doctrine of Excusable Neglect

The Supreme Court broadly interpreted the "excusable neglect" clause of Fed. R.

Bankr.P. 9006(b)(1) in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). *Pioneer* involved a creditor's attempt to file a proof of claim twenty days after the claim bar date by relying on excusable neglect to explain the failure to file on time. 507 U.S. at 384, 113 S.Ct. at 1492. *Pioneer* divided discussion of excusable neglect into two analytical components, whether the delay was due to neglect and whether the neglect was excusable. The opinion also emphasized that the lack of prejudice to a debtor or the judiciary combined with the good-faith conduct of the creditor "weighs strongly in favor of permitting the tardy [filing]." 507 U.S. at 398, 113 S.Ct. at 1499. It was held that neglect can include "late filings caused by inadvertence, mistake or carelessness, as well as by intervening circumstances beyond the party's control." The opinion pointed out that Congress, in drafting Rule 9006(b)(1), "plainly contemplated that the courts would be permitted, where appropriate, to accept late filings." 507 U.S. at 388, 113 S.Ct. at 1495.

■ Whether a category of neglect is excusable involves an equitable analysis. 507 U.S. at 395, 113 S.Ct. at 1498. Relevant factors include: "[i] the danger of prejudice to the debtor, [ii] the length of the delay and its potential impact on judicial proceedings, [iii] the reason for the delay, including whether it was within the reasonable control of the movant, and [iv] whether the movant acted in good faith." *Id.*

■ Examination of the causes and effects of TIFCO's neglect in this case weighs in TIFCO's favor. TIFCO blamed its failure to file a timely Bill of Costs on an unrelated litigation that consumed all of its counsel's time during all of November and half of December of 1996. At its broadest, the *Pioneer* ruling forgives a party and its counsel when they are distracted by other pressing matters.

The cause of TIFCO's neglect is within the excusable limits drawn in *Pioneer.* TIFCO's involvement with other litigation during November and December of 1996 presents as valid an excuse for the delay as the creditor's change of law firms in *Pioneer* and conse-

quent failure of counsel to receive notice from his client of the claims bar date. TIFCO's involvement in another litigation, where the demands on it to plead, respond, and argue were mandated by the other court, was largely beyond its control.

In addition, the Committee has not shown inequity in allowing the late-filed Bill of Costs. Neither this court nor the Committee was prejudiced by TIFCO's tardiness. TIFCO's thirty-day delay did not create extra or needless expenditures for court personnel, nor did it delay any other court proceedings that might have been contingent on TIFCO's timely filing.

The Committee has not shown material prejudice from TIFCO's delay in filing its Bill of Costs. It suggests that this could cause some delay in liquidating Debtor's assets and making distribution, but has not claimed that this is the only issue to be finished before final distribution to creditors. Its other assertion that the estate is required to pay expenses of objecting to the late Bill is not weighty, particularly when its objection to the lateness of filing was not weighty.

Indeed, this preferential transfer litigation was burdensome to TIFCO, and that burden weighed more heavily on it than minor burdens on the estate from the present dispute over untimeliness of filing. Suit commenced October 3, 1994, lasted a little more than two years, cost TIFCO a great deal to defend, and concluded with a judgment for Defendant. Once the late filing is allowed to stand, the bankruptcy estate will end up paying the same amount it would have paid had TIFCO either timely filed its Bill of Costs or filed a motion to extend time to file its Bill of Costs within thirty days as required by Local Rule 417(A). So the estate suffers no material harm from allowing the late filing to stand.

Finally, the Committee has not shown that TIFCO acted in bad faith.

Thus, the time for TIFCO to file its Bill of Costs will be extended to December 20, 1996, the date the Bill was filed. Its Bill of Costs is, therefore, deemed timely filed.

### Allowable Items in Bill of Costs

The Committee's objections to TIFCO's Bill of Costs also include argument that TIFCO provided insufficient factual support and erroneously included costs not allowed by statute.

Authority for awarding particular costs to a prevailing party is found in Fed.R.Civ.P. 54(d)(1) (Fed. R. Bankr.P. 7054) and 28 U.S.C. § 1920. *Haroco Inc. v. American National Bank & Trust Co. of Chicago*, 38 F.3d 1429, 1439 (7th Cir.1994).

Rule 54(d)(1) provides: "Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs...." Fed.R.Civ.P. 54(d)(1). Costs are being allowed to TIFCO under that Rule.

■ Section 1920 provides:

A judge or clerk of any court of the United States [1] may tax as costs the following:

(1) Fees of the clerk or marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees for disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920.

■■ TIFCO's burden is to demonstrate that items on its Bill of Costs are "allowable [under federal law] and, if so ... are both reasonable and necessary." *Soler v. Waite*, 989 F.2d 251, 255 (7th Cir.1993). The decision to make an award of costs to the prevailing party in a litigation is reserved to the discretion of the court. *Id.*

TIFCO's Bill of Cost totaled $8,611.39. The Committee raises no objection to the line item entitled "costs incident to taking depositions," amounting to $1,525.92. The remaining $7,085.47 comprises four categories: (1) court reporter fees; (2) printing fees; (3) witness fees; and (4) mail, Federal Express, courier, calls, facsimile, and secretarial overtime costs. The Committee objected to the first three categories on evidentiary grounds and to the last category on statutory grounds.

#### 1. Court reporter fees

Section 1920(2) allows the prevailing party to recoup fees for court reporters and their transcript costs.

■ The Committee objects to TIFCO's court reporter fees, amounting to $917.75, because they are not supported by documentation. TIFCO failed to include invoices or receipts for payment of the court reporter fees. TIFCO admitted that it failed to attach those documents, but instead pointed to its attorneys' ledger record accompanying the Bill of Costs which included three entries for court reporter fees totaling $918.00. TIFCO stated that it could produce the original invoices if required. That it must do.

Local Bankruptcy Rule 417(B) defines the parameters of reasonable and necessary transcript costs. It provides in part

---

**1.** Bankruptcy Judges are by statute judicial officers of the District Court who are delegated by District Rule the authority over bankruptcy core and related matters that is vested in the District Court. They are therefore judges within the District Court, a Court defined as a "court of the United States." Following the Supreme Court's ruling in *Marathon*, Congressional action eliminated the Bankruptcy Court as a legal entity and

made the phrase "Bankruptcy Court" into a term of reference for all bankruptcy judges within the District who collectively serve as a unit of the District Court. Thus, § 1920 applies to work of bankruptcy judges. *See* discussion in *In re Volpert*, 177 B.R. 81 (Bankr.N.D.Ill.1995), *aff'd* 186 B.R. 240 (N.D.Ill.1995), *aff'd on other grounds*, 110 F.3d 494 (7th Cir.1997).

[t]he cost of any transcript allowed to be taxed shall not exceed the regular copy rate as established by the Judicial Conference of the United States and in effect at the time the transcript or deposition was filed ... [O]nly the cost of the original transcript together with the cost of one copy each where needed by counsel and, for deposition transcripts, the copy provided to the court pursuant to Rule 406(c), shall be allowed.

N.D. Ill. Bankr.R. 417(B). The per-page rates authorized by the Judicial Conference vary, depending on whether the transcript is ordinary, expedited, daily, or hourly; and within each category, the per-page rates vary based on whether the transcript is the original, the first copy, or an additional copy. *Administrative Office of the United States Courts, 6 Guide to Judiciary Policy and Procedures,* ch. 20 at 4.

As TIFCO failed to produce sufficient documentation to determine the reasonableness of its costs and whether they fall within limits set by Rule 417(B), its transcript fees cannot be allowed unless and until that is done.

### 2. Printing fees

Printing fees are sought under § 1920(3).

The Committee objects to TIFCO's printing fees, amounting to $2,831.79, because of failure to itemize and document those fees. TIFCO responded that the previously mentioned ledger entries of its lawyers that listed printing costs represented proper itemization and that TIFCO's counsel used a computer tracking system to properly identify and accumulate printing costs associated with the subject litigation.

■ Even though § 1920(3) allows the prevailing party to recoup printing fees, these fees are subjected to scrutiny regarding their necessity and reasonableness. The Seventh Circuit panel in *Haroco* examined printing fees and ruled that the per-page cost for printing fees "may not exceed the charges of an outside print shop." 38 F.3d at 1441. Moreover, the court held that a convenience copy of all the documents for the attorney was "noncompensable." *Id.*

TIFCO has not supplied sufficient data and supporting bills to enable determination as to whether these costs were reasonable and necessary. It did not demonstrate the precise number of pages or copies it claims to be necessary for the litigation, and did not provide information regarding the types of documents or the number of copies made per document. Without this information, it cannot be determined whether TIFCO obtained necessary and compensable copies, or unnecessary and non-compensable copies, or both. Thus, TIFCO's printing fees cannot be allowed on the present record.

### 3. Witness fees

The Committee's third objection focuses on TIFCO's submission for witness fees, amounting to $2,559.76. It is argued that this claim is unsupported by sufficient detail to determine whether it is properly claimed under the statute. In this regard, the Committee relies on §§ 1920 and 1821 of title 28 U.S.C. Section 1920, enumerates allowable fees for the prevailing party, while § 1821 establishes the appropriate guidelines for awarding attendance fees, subsistence fees, and travel fees for witnesses.

Section 1920(3) allows the prevailing party to recover its necessary witness fees. TIFCO named two individuals in its request for such fees: Richard Keating, whose total amounted to $1,499.21; and Jon Williams, whose total amounted to $1,060.55. Mr. Keating was called to testify as an expert regarding the nature of the premium finance business. Mr. Williams was called to testify regarding the terms of the parties' premium finance agreement.

■ In regard to its claim for witness fees for Mr. Keating, TIFCO submitted a statement of expenses, totaling $8,134.21, but only claimed $1,499.21 for his witness fee. However, evidentiary detail for the requested expenses is lacking. Mr. Keating's subsistence claim included two hotel stays—one for $192.35 on June 4, 1996, and one for $288.31 on June 24, 1996. Section 1821 refers to 5 U.S.C. § 5702(a) to determine the reasonableness of a subsistence fee. Section 5702(a) allows subsistence at a daily rate comparable to that given to traveling government employees. The rate allowed to a gov-

ernment employee for an overnight stay in Chicago is $161.00, including $119.00 for hotel and $42.00 for meals and incidental expenses. 41 C.F.R. 301 app. A (1996). Therefore, TIFCO can receive no more than $161.00 for each of Mr. Keating's overnight stays and must provide hotel receipts to substantiate claims for that limited amount.

 In addition, TIFCO requested reimbursement for Mr. Keating's air travel of $938.55 on June 23, 1996, but failed to attach his ticket stub from the air carrier. Without the ticket stub, the reasonableness of and factual support for this fare cannot be determined. *See* 28 U.S.C. § 1821(c)(1) (allowing reimbursement for a witness's airfare if the witness "utilize[s] a common carrier at the most economical rate reasonably available." A receipt or other evidence of actual cost must be furnished). *Quality Care—USA, Inc. v. Gorenstein Enters., Inc.*, 1988 WL 33824, 1988 U.S. Dist. Lexis 2870 (N.D.Ill. 1988) (reducing a witness's reimbursement for first class airfare to an economy rate).

 Finally, TIFCO claims three days of statutory attendance fees for Mr. Keating at $40.00 per day. Section 1821(b) allows this attendance fee, and TIFCO must be reimbursed a total of $120.00 under that provision.

Thus, TIFCO's request for $120.00 will certainly be allowed for Mr. Keating's attendance fees, but other costs claimed for Mr. Keating cannot be allowed without further documentation.

TIFCO also submitted three pages of documents associated with Mr. Williams' witness fees. First, it claims a single attendance-fee day in its request for Mr. Williams at $40.00 which, as stated, is allowed by § 1821(b). It also submitted two taxicab receipts for Mr. Williams' journey from O'Hare Airport to downtown Chicago and back at $30.00 per trip. Section 1821(c)(3) authorizes such expenses.

TIFCO also requests $1,020.65 for Mr. Williams' airfare. Mr. Williams' ticket stub, submitted by TIFCO, totaled only $960.55. Furthermore, Mr. Williams' travel itinerary demonstrates that Mr. Williams flew coach class in a triangular path: from Baltimore, Maryland to Chicago, Illinois on June 25, 1996; from Chicago, Illinois to Buffalo, New York on June 25, 1996; and from Buffalo, New York back to Baltimore, Maryland on June 27, 1996. TIFCO failed to explain the inclusion of Mr. Williams' trip to Buffalo in its submission of the Williams' travel-expense claim. As a result, it has not yet shown how the trip to Buffalo is recompensable under the statute. Examining the point-to-point components of Mr. Williams' ticket stub shows that the Baltimore, Maryland to Chicago, Illinois leg of his trip totaled $309.00. The reasonable airfare for Mr. Williams' trip, therefore, presently appears to be two times $309.00, or $618.00, plus tax of $5.85 for a total of $623.85. Absent further documentation, that is the amount of airfare recoverable.

In summary, TIFCO's request for $40.00 for Mr. Williams' attendance fees, $60.00 for taxicab rides, and $623.85 for Mr. Williams' air travel is allowed. The present record does not support more.

### 4. Mail, Federal Express, Couriers, Calls, Facsimile Messages, Secretarial Overtime

 Finally, the Committee objected to TIFCO's request for $776.18 for mail, Federal Express, couriers, calls, facsimile messages, and secretarial overtime because these categories are not allowed under § 1920 as taxable costs. TIFCO failed to respond to this objection.

Section 1920 clearly does not include these items as taxable costs. "Expenses that are not on the statutory list must be borne by the party incurring them." *Collins v. Gorman*, 96 F.3d at 1058. These costs will not be allowed.

### CONCLUSION

For reasons set forth above and by separate order to be entered, TIFCO's request for extension to file a late Bill of Costs is granted through and until December 20, 1996, and its Bill filed that date will be deemed timely filed. TIFCO's costs are sufficiently documented and authorized by law in the total amount of $2,369.77. It will be given time to provide additional documenta-

tion for other requested costs and to support those requests by affidavit. The Committee will then have time to respond, supported by its counteraffidavit. A status date will be set to consider these filings and, if necessary, set an evidentiary hearing on any matters as to which the counteraffidavit has taken issue with TIFCO's affidavit.