**In re D&B COUNTRYSIDE, L.L.C., Debtor.**

**D&B COUNTRYSIDE, L.L.C., Plaintiff,**

v.

**S.P. NEWELL, et al., Defendants.**

**Bankruptcy No. 95–11946–SSM.
Adversary No. 96–1110.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Feb. 9, 1998.

**74**

Joseph S. Luchini, Hazel & Thomas, P.C., Falls Church, VA, for D&B Countryside, L.L.C.

John T. Richards, Jr., Trout & Richards, P.L.L.C., Washington, DC, for S.P. Newell.

**MEMORANDUM OPINION**

STEPHEN S. MITCHELL, Bankruptcy Judge.

This matter is before the court on defendant Newell's motions (a) for release of an appeal bond; and (b) for review of the plaintiff's costs taxed by the clerk of this court on December 16, 1997. A hearing was held on January 13, 1998, at which counsel for both the plaintiff and the defendant appeared and presented argument. At the conclusion of the hearing, the court took the matter under advisement to review the applicable law.

*Facts*

The debtor, D&B Countryside, L.L.C. ("the debtor") is a Virginia limited liability company formed in 1994 to develop a parcel of land in Sterling, Loudoun County, Virginia, known as Parc City Center. It filed a voluntary petition under chapter 11 of the Bankruptcy Code in this court on May 9, 1995, and thereafter brought this action to set aside a $3 million note, deed of trust, and confessed judgment in favor of S.P. "Chip" Newell ("Newell").[1] The debtor additionally sought an award of damages for civil conspiracy and for slander of title to its real estate arising from the recording of the deed of trust and the docketing of the confessed judgment. After a two-day trial held on December 9 and 10, 1996, this court on February 24, 1997, issued a memorandum opinion and judgment declaring that the $3 million note, deed of trust, and confessed judgment were void as a liability of the debtor and as a lien against the debtor's property, but dismissing the slander of title and conspiracy causes of action.[2] The underlying facts of this action are adequately set forth in the court's memorandum opinion and need not be repeated here, but to the extent that the court's findings are relevant to the *motion before the court, the court incorporates them by reference. The judgment also provided that the debtor was entitled to recover its taxable costs, which is the issue currently before the court.*

On November 21, 1997, the debtor filed a bill of costs requesting that the following amounts be taxed against Newell:

| Type of fee requested | Amount requested |
|---|---|
| Fees of the Clerk | $ 225.00 |
| Fees for service of summons and subpoena | $1,345.50 |
| Fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case | $2,446.35 |
| Fees for witnesses | $ 485.24 |
| Fees for exemplification and copies of papers necessarily obtained for use in the case | $2,227.05 |
| Docket fees under 28 U.S.C.1923 | 22.50 |
| Other costs | $3,000.00 |
| Total: | $9,751.64 |

---

**1.** Named as defendants, in addition to Newell, were Newell's attorney, Henry F. Brandenstein, as well as Jack L. Wuerker and Efthalia Triarhos, the substitute trustees under the challenged deed of trust. The plaintiff voluntarily dismissed Mr. Brandenstein as a defendant. No answer or appearance was filed by the substitute trustees.

**2.** Newell appealed the judgment of this court and the debtor cross-appealed. On July 25, 1997, the United States District Court affirmed this court's ruling in all respects. Both parties noted their appeal to the Fourth Circuit, but Newell subsequently voluntarily dismissed his appeal. The debtor's appeal remains pending before the Fourth Circuit.

■ On December 16, 1997, the clerk taxed the above amounts against Newell. On December 22, 1997, Newell filed a timely[3] motion for this court to review the debtor's bill of costs, noting his opposition to several of the costs asserted by the debtor as not being properly taxable under 28 U.S.C. § 1920. Previously, on November 12, 1997, Newell filed a motion to release his appeal bond.

*Conclusions of Law and Discussion*

**I.**

■ Under Fed.R.Bankr.P. 7054(b), "[t]he court *may* allow costs to the prevailing party [in an adversary proceeding] except when a statute of the United States or these rules otherwise provides" (emphasis added). While it is clear that Rule 7054(b) is modeled on Fed.R.Civ.P. 54(d), there are significant differences.[4] Fed.R.Civ.P. 54(d) mandates an allowance of costs "as of course" unless the court "otherwise directs," thereby creating a strong presumption in favor of taxing costs unless a statute provides otherwise. Fed.R.Bankr.P. 7054(b), however, contains no such standard. *Samayoa v. Jodoin (In re Jodoin)*, 196 B.R. 845, 856 (Bankr.E.D.Cal. 1996), *aff'd on other grounds*, 209 B.R. 132 (9th Cir. BAP 1997); 10 Moore's Federal Practice § 54.101[1][a], at 54–148 to 149 (3d ed.1997). *But see* 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2668, at 197–201 (2d 1983) (reasoning that an award of costs even under Fed.R.Civ.P. 54(d) is within the discretion of the court). Accordingly, whether to award costs is within the sound discretion of the bankruptcy court. *Jodoin*, 196 B.R. at 856; *Rathbone v. Lake (In re Consolidated Partners Investment Co.)*, 156 B.R. 982, 987 (Bankr.N.D.Ohio 1993); 10 Collier on Bankruptcy ¶¶ 7054.05 & 7054.RH, at 7054–8 & 7054–10 to 11 (Lawrence P. King, ed. 15th ed. rev.1997). Once a party establishes that a certain cost fits within the statutory definition, the burden shifts to the other party to prove that the allowance of the cost should not be allowed. *Principe v. McDonald's Corp.*, 95 F.R.D. 34, 36 (E.D.Va. 1982) (Warriner, J.). Finally, the court reviews de novo the clerk's taxation of costs. 10 Moore's Federal Practice § 54.100[3], at 54–145.

■ A court may only tax those costs authorized by statute. Relevant to the present controversy, 28 U.S.C. § 1920 provides as follows:

> A judge or clerk of any court of the United States[5] may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

---

**3.** In its response to Newell's motion to review the costs taxed by the Clerk, the debtor asserts that the opposition is not timely, citing to Local Rule 54 of the United States District Court for this district, and, in particular, to the requirement of Local Rule 54(D)(2) that the party opposing costs serve an opposition within 11 days after service of the bill of costs. Local Rule 54, however, applies only to costs awarded by the District Court under Fed.R.Civ.P. 54(d). As noted below, subsection (d) of Fed.R.Civ.P. 54 is *not* incorporated by the Federal Rules of Bankruptcy Procedure. Instead, Fed.R.Bankr.P. 7054(b) is the authority for an award of costs in bankruptcy cases. Local Bankruptcy Rule 7054–1, which implements Fed.R.Bankr.P. 7054, contains no provision analogous to Local Rule 54(D)(2) of the District Court requiring a pre-taxing objection. Under Fed.R.Bankr.P. 7054(b), Newell had five days from the date costs were taxed by the clerk to serve a motion for review of costs. In this case, the costs were taxed by the clerk on December 16, 1997, and Newell served his motion on December 22, 1997. Because December 21, 1997—the fifth day after costs were taxed—was a

Sunday, Newell's motion for review filed December 22, 1997, was timely. *See* Fed.R.Bankr.P. 9006(a).

**4.** Fed.R.Bankr.P. 7054(a) incorporates subsections (a) through (c) of Fed.R.Civ.P. 54, but not subsection (d), which relates to taxation of costs. Instead, Bankruptcy Rule 7054 contains its own language relative to costs.

**5.** While under 28 U.S.C. § 451, a bankruptcy court is not specifically designated as a "court of the United States," bankruptcy courts are a unit of the district court in each judicial district under 28 U.S.C. § 151 and exercise the power of the district court in bankruptcy cases by virtue of the reference provided for by 28 U.S.C. § 157(a). Accordingly, bankruptcy judges and clerks may tax costs under 28 U.S.C. § 1920. *See Schwinn Plan Committee v. Transamerica Insurance Finance Corp. (In re Schwinn Bicycle Co.)*, 210 B.R. 764, 769 n. 1 (Bankr.N.D.Ill.1997); 10 Collier on Bankruptcy ¶ 7054.05, at 7054–8 (footnote added).

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

The Supreme Court has held that because Congress drafted a very precise statute without language suggesting that the list of costs in § 1920 is only representative, courts must construe § 1920 very narrowly, and absent explicit statutory authority, may not award costs not provided for by § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444–45, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987) (disavowing that part of *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964), which suggested that district court judges could "sparingly" tax costs not specifically allowed by statute); *see also West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 86, 111 S.Ct. 1138, 1140–41, 113 L.Ed.2d 68, (1991) (noting that *Crawford Fitting* held that 28 U.S.C. § 1920, in conjunction with 28 U.S.C. § 1821 (witness fees), "define[s] the full extent of a federal court's power to shift litigation costs absent express statutory authority to go further."); 10 Moore's Federal Practice § 54.103[3][a], at 54–176. Although § 1920 is an exhaustive list of those categories of costs that may be taxed, the particular item sought to be taxed need not be expressly mentioned in the statute, and the court has some latitude to interpret the statutory language. *Weeks v. Samsung Heavy Industries Co.*, 126 F.3d 926, 945 (7th Cir.1997); *Alflex Corp. v. Underwriters Laboratories, Inc.*, 914 F.2d

175, 177–78 (9th Cir.1990) (per curiam), *cert. denied*, 502 U.S. 812, 112 S.Ct. 61, 116 L.Ed.2d 36 (1991); *SK Hand Tool Corp. v. Dresser Industries, Inc.* 852 F.2d 936, 944 (7th Cir.1988), *cert. denied*, 492 U.S. 918, 109 S.Ct. 3241, 106 L.Ed.2d 589 (1989); 10 Moore's Federal Practice § 54.103[3][a], at 54–176 to 177.

## II.

### A.

There are several of the claimed costs to which Newell has *not* objected. These include the filing fee for the adversary proceeding of $120, witness fees of $445.24 [6] and docket fees under 28 U.S.C. § 1923 in the amount of $22.50. Accordingly, no further discussion is required with respect to those costs, and they will be allowed. The remaining costs claimed by the debtor have all been objected to by Newell. Accordingly, the court will address each of the disputed categories in turn.

### B.

The court first addresses the $105.00 fee that the debtor paid when it filed its notice of cross-appeal. As noted above, the judgment, although finding in the debtor's favor on its counts for declaratory relief, dismissed the counts seeking monetary damages. The debtor is seeking to recover the fee it paid to file its cross-appeal of this latter portion of this court's judgment. Under Fed. R.Bankr.P. 8014,

Except as otherwise provided by law, agreed to by the parties, *or ordered by the district court or the bankruptcy appellate panel,* costs shall be taxed *against the losing party on an appeal.* If a judgment is affirmed or reversed in part, or is vacated, costs shall be allowed only as ordered by the court. Costs incurred in the production of copies of briefs, the appendices, and the record and in the preparation and transmission of the record, the cost of the

---

**6.** This amount includes fees for eight witnesses at trial and one for a deposition. In his motion to review costs, counsel for Newell initially objected to the witness fees of Samuel Skinner on the mistaken basis that Mr. Skinner was the debtor's party representative. Mr. Skinner, however, was the financial representative for Robert and Marilyn DeLuca, who had previously controlled the debtor. At the hearing, Newell's counsel withdrew his objection to the witness fees for Mr. Skinner.

reporter's transcript, if necessary for the determination of the appeal, the premiums paid for cost of supersedeas bonds or other bonds to preserve rights pending appeal and *the fee for filing the notice of appeal shall be taxed by the clerk as costs of the appeal in favor of the party entitled to costs under this rule.*

It is unclear from the language of the rule whether "the clerk" who taxes "the fee for filing the notice of appeal" is the clerk of the bankruptcy court or the clerk of the appellate tribunal (the district court or, in those circuits that have one, the bankruptcy appellate panel). The more natural reading would suggest that such costs are taxed in the bankruptcy court, subject to any directions by the appellate tribunal. Such a reading, moreover, is consistent with Fed.R.App.P. 39(e) which requires that certain costs on an appeal from the district court—including the filing fee—be taxed in the district court rather that the court of appeals. Collier, however, seems to read Bankruptcy Rule 8014 differently. *See* 10 Collier on Bankruptcy ¶ 8014.01, at 8014–2 ("The Rule [8014] also gives the *appellate tribunal* considerable discretion in varying the general rule" that costs are taxed against the losing party) (emphasis added).

In the present instance, however, the court need not decide whether the cost of filing a notice of appeal is properly taxed by the bankruptcy court or by the district court. Under the plain language of Bankruptcy Rule 8014, such costs may be taxed only against the "losing party." As to the debtor's cross-appeal, Newell was not the "losing party"—it was the debtor, as cross-appellant, who was the losing party, since the District Court affirmed this court's judgment dismissing the conspiracy and slander of title counts. Accordingly, the court will not allow as costs the $105.00 paid by the debtor to file its notice of cross-appeal.

### C.

The court next addresses the costs in the amount of $1,345.50 paid by the debtor for service of summons and subpoenas in the course of this proceeding. All service of subpoenas in this action was accomplished using a private process server. Under the plain language of 28 U.S.C. § 1920(1), only fees charged by a United States Marshal under 28 U.S.C. § 1921, which includes service of summons and subpoenas, are properly taxed as costs. However, because the United States Marshals Service no longer serves summonses and subpoenas in civil cases, many courts have held that § 1920(1) contemplates that a prevailing party would be able to recover costs incurred by use of a private process server, notwithstanding that § 1920(1) does not expressly mention such fees. Other courts disagree. *Compare Alflex Corp.*, 914 F.2d at 178 (allowing recovery of fees of private process server under § 1920(1), *Sullivan v. Chrysler Motors Corp.*, 1997 WL 94236, at *6 n. 5 (D.N.J.1997) (same), and *Margaretten & Company, Inc. v. Howard (In re Howard)*, 1991 WL 79915, at *2 (Bankr.D.Md.1991) (Mannes, J.) (same), *with United States ex. rel. Evergreen Pipeline Construction Co. v. Merritt Meridian Construction Corp.*, 95 F.3d 153, 172 (2d Cir.1996)) (holding that plain language of § 1920 does not allow taxing as costs private process fees), *Crues v. KFC Corp.*, 768 F.2d 230, 234 (8th Cir.1985) (same); *Pion v. Liberty Dairy Co.*, 922 F.Supp. 48, 53 (W.D.Mich. 1996) (same), *and Zdunek v. Washington Metropolitan Area Transit Authority*, 100 F.R.D. 689, 692 (D.D.C.1983) (same); *see also Collins v. Gorman*, 96 F.3d 1057, 1059 (7th Cir.1996) (reasoning that under *West Virginia University Hospitals*, a statute must be applied as written if it has an ascertainable meaning, and holding that private process server fees are taxable costs under § 1920(1) to the extent that they do not exceed the Marshal's fee).

The Fourth Circuit has not ruled on this issue. Nevertheless, this court believes that the better reasoned approach—and the position the Fourth Circuit would adopt—would be that private process server fees are not costs that may be taxed under § 1920(1). As noted by Judge Easterbrook, a private process server may do the same thing as a United States Marshal, and may do it more efficiently and cheaper. But whatever the similarities between the functions performed, a private process server does not become a Marshal. *Collins*, 96 F.3d at 1059. The

subsection is clear on its face and it must be applied as written. *Id.* To extrapolate that private process server fees can be recovered under § 1920(1) would do violence to the principals taught by the Supreme Court in *Crawford Fitting* and *West Virginia University Hospitals*.[7] Accordingly, this court will disallow the entire amount the debtor sought to tax for service of summons and subpoenas.

### D.

The court next turns to whether the debtor is entitled to all or part of the costs of a court reporter and transcripts for eleven depositions taken during the course of the litigation.[8] Only one of the depositions—that of James Carroll—was used at trial as a substitute for the live testimony of the witness and received into evidence. Two of the depositions—that of Joel T. Broyhill and Richard Houser—were of the debtor's own representatives.

Courts have generally permitted the reimbursement of fees relating to depositions when "necessarily obtained for use in the case." 10 Moore's Federal Practice § 54.103[3][c][i], at 54–179 to 181. At one time, the rule in this district appears to have been fairly restrictive, with deposition costs only being recoverable by a prevailing party if the deposition was actually introduced at trial or used for impeachment purposes. *Sun Publishing Company v. Mecklenburg News, Inc.*, 594 F.Supp. 1512, 1524 (E.D.Va. 1984) (Merhige, J.); *Marcoin, Inc. v. Edwin K. Williams & Co.*, 88 F.R.D. 588, 592 (E.D.Va.1980) (Kellam, J.); *Sperry Rand Corp. v. A–T–O, Inc.*, 58 F.R.D. 132, 138–39 (E.D.Va.1973) (Merhige, J.). If the deposition was taken merely for discovery purposes, however, the expense of taking the deposition and having a transcript made was born by the party taking the deposition. *Marcoin*, 88 F.R.D. at 592; *Sperry Rand Corp.*, 58 F.R.D. at 138.

■ This restrictive reading of the statute, however, has been rejected by the Fourth Circuit, which favors a more lenient test that "award[s] costs when the taking of the deposition is reasonably necessary at the time of its taking." *LaVay Corp. v. Dominion Federal Savings & Loan Association*, 830 F.2d 522, 528 (4th Cir.1987), *cert. denied*, 484 U.S. 1065, 108 S.Ct. 1027, 98 L.Ed.2d 991 (1988). This more lenient test has been followed in the reported cases subsequent to *LaVay* in this district. *Jop v. City of Hampton*, 163 F.R.D. 486, 488 (E.D.Va.1995) (Doumar, J.); *Board of Directors, Water's Edge v. The Anden Group*, 135 F.R.D. 129, 133–34 (E.D.Va.1991) (Ellis, J.).[9] Judge Doumar

---

**7.** To be sure, there is no obvious policy reason why private process server fees should not be recoverable, and it may simply be that Congress has not focused on the need to amend § 1920 to take account of the fact that United States Marshals no longer serve subpoenas in civil cases. However, it is the court's duty to apply a statute as written. *See Old Bridge Estates Community Association v. Lozada (In re Lozada)*, 214 B.R. 558, 563 (Bankr.E.D.Va.1997). To the extent a strict reading does not reflect Congress's intent, Congress is always free to amend the statute.

**8.** The depositions at issue, and their cost, are as follows:

| | |
|---|---|
| Kevin Donohoe | $100.00 |
| Richard Houser | $172.85 |
| Joel T. Broyhill | $139.85 |
| William Daly (writing time) | $ 40.00 |
| Michele Hurley (writing time) | $ 40.00 |
| James Caroll | $195.95 |
| Samuel Skinner | $118.40 |
| Robert DeLuca | $181.10 |
| Marilyn DeLuca | $273.50 |
| Henry F. Brandenstein, Jr. | $585.80 |
| S.P. Newell | $533.90 |

In its affidavit in support of the bill of costs, counsel for the debtor asserts that it deposed Kevin Donohoe, William Daly, Michele Hurley, Samuel Skinner, Henry Brandenstein, and Newell and that costs for the reporter and transcripts was $1,448.10. The debtor asserts that Newell deposed the other persons, but that the debtor incurred costs of $963.25 in obtaining transcripts of those depositions.

**9.** This standard is clearly the majority standard followed by other courts as well. *See, e.g., Zotos v. Lindbergh School District*, 121 F.3d 356, 363 (8th Cir.1997); *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1184 (Fed.Cir.1996), *reh'g granted in part, reh'g en banc denied*, 1 F.3d 1253 (table), 1993 WL 217173, *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1188, 127 L.Ed.2d 538 (1994); *Finchum v. Ford Motor Co.*, 57 F.3d 526, 534 (7th Cir.1995); *Soler v. Waite*, 989 F.2d 251, 254–55 (7th Cir.1993); *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir.1991); *In re Air Crash Disaster*, 687 F.2d 626, 631 (2d Cir.1982); *Scallet v. Rosenblum*, 176 F.R.D. 522, 525–27 (W.D.Va.1997); *Pion v. Liberty Dairy Co.*, 922 F.Supp. 48, 53 (W.D.Mi.1996); *Ortega v. IBP, Inc.*, 883 F.Supp. 558, 561 (D.Kan.1995); *Char-*

noted in *Jop* that in making this determination, there is no precise formula or rule that can be devised, but rather, the determination involves a subjective judgment on the part of the court. *Jop*, 163 F.R.D. at 488. Thus, the standard to be employed is whether the depositions were reasonably necessary for preparation at trial at the time they were taken.[10]

The court will allow as costs the court reporter fees for eight of the eleven persons deposed. The issues is this case were highly fact-driven, and while the number of depositions may seem large, the court believes they were justified given the circumstances. Numerous persons were involved with the transactions that were the subject of this action, each of whom played some pivotal role. In particular, pinning down who knew what, and when they learned of it, was central. Accordingly, the court finds that it was reasonably necessary for the debtor to take depositions of the major participants whose testimony was likely to be needed at trial, even though the knowledge of those participants might overlap to some extent.

■ The court, however, will not allow the debtor to recover the costs it has sought with regard to the depositions of William Daly or of the debtor's own witnesses, Joel Broyhill and Richard Houser.[11] First, Mr. Daly did not testify at trial and had very little involvement with the transactions in question. From a review of the exhibits used at trial,

and this court's recollections, the only evidence introduced at trial that was even tangentially related to Mr. Daly was the attempted introduction of plaintiff's exhibits 47 and 49. Mr. Daly was an attorney at the law firm, Rees, Broome & Diaz, representing Newell in his transactions with the DeLucas. Both exhibits were purportedly drafted by Mr. Daly and were drafts (with handwritten or redlined changes) of promissory notes between Newell and the DeLucas in their individual capacity. The court sustained objections to the admission of both exhibits. Moreover, it was clear to the court that the attorney with the personal knowledge of the events in question was not Mr. Daly, but rather Mr. Brandenstein, who did testify at trial.[12] Simply stated, this court cannot find that the debtor has shown it was reasonably necessary to depose Mr. Daly in preparation for trial.

■ The court also cannot find that it was necessary to purchase transcripts of the deposition testimony of the debtor's own witnesses, Richard Houser and Joel Broyhill. These depositions were taken by Newell, but the debtor purchased copies of the transcripts. There is no suggestion that either witness was expected to be unavailable for trial, which is the only circumstance in which a transcript of one's own witness would ordinarily be necessary. Undoubtedly, it was useful to debtor's counsel to have a copy, given the possibility that the testimony of his

---

*ter Medical Corp. v. Cardin*, 127 F.R.D. 111, 113 (D.Md.1989); *see also* 10 Collier on Bankruptcy ¶ 7054.05, at 7054–9; 10 Moore's Federal Practice § 54.103[3][c][i], at 54–179 to 182. *But see Washington State Department of Transportation v. Washington Natural Gas Co.*, 59 F.3d 793, 806 (9th Cir.1995) (noting that "[d]isallowance for expenses of depositions not used at trial is within the district court's discretion.").

10. However, the standard remains that when a deposition is taken for mere discovery or for the convenience of counsel, the costs of such deposition may not be taxed. *Water's Edge*, 135 F.R.D. at 134; *Scallet*, 176 F.R.D. 522, 526–27.

11. Mr. Daly's name is spelled alternatively "Daly" and "Daley" throughout the pleadings. From a review of the trial exhibits, however, it appears that the correct spelling is "Daly."

12. The court sees a distinction between the necessity of the depositions of Mr. Daly on the one hand and Michelle Hurley, a paralegal at the law firm of Rees, Broome, and Diaz, on the other. At exactly what point Newell acquired actual knowledge of the lis pendens on the debtor's property was a hotly contested fact and crucial to the debtor's case. Ms. Hurley's testimony—as the person who personally took the phone call from the title searcher, Perry Albanese, who reported a lis pendens existed against the property, could have been very relevant to the debtor's case. At trial, however, this fact was testified to by Mr. Albanese himself. The testimony of Mr. Daly, however, who, according to the debtor was only "aware of when Newell discovered the lis pendens" would have been simply hearsay as to that issue.

witnesses might be impeached if they testified at trial contrary to their depositions, but at bottom the purchase of those two transcripts was for the convenience of counsel, not to assist in proving the debtor's case at trial. Accordingly, this court will allow the debtor to recover as the cost of "transcripts necessarily obtained for use in the case" only the sum of $2,068.65, which represents the entire amount sought by the debtor, less the amounts attributable to the depositions of Daly, Broyhill, and Houser.

### E.

■ The court now turns to the claimed costs of labeling ("Bates stamping") and photocopying documents used in this case.[13] Under 28 U.S.C. § 1920(4), a prevailing party may recover as costs "[f]ees for exemplification and copies of papers necessarily obtained for use in the case." Photocopying charges are taxable only to the extent that the copies were actually used as court exhibits or were furnished to the court or to opposing counsel. *Water's Edge,* 135 F.R.D. at 138 (Ellis, J.); *Sun Publishing Co.,* 594 F.Supp. at 1524 (Merhige, J.); *see also Tilton v. Capital Cities/ABC, Inc.,* 115 F.3d 1471, 1476 (10th Cir.1997) (stating that an award of costs for trial exhibits is based upon an "examin[ation of] whether the circumstances in a particular case justify an award of costs."); *Holmes v. Cessna Aircraft Co.,* 11 F.3d 63, 64 (5th Cir.1994) (per curiam) (noting that photocopies may be taxed when the copies were "necessarily obtained for use in the litigation.") 10 Moore's Federal Practice § 54.103[3][d], at 54–191 to 192.

■ Under the standard set forth in *Water's Edge,* the debtor is entitled to recover as costs $1,175.00 it spent for photocopying exhibits for trial and $41.50 it spent in producing documents for Newell. The court will not allow as costs $1,010.55 the debtor spent in photocopying and labeling documents that Newell produced in discovery. As set forth by Judge Ellis in *Water's Edge,* costs for

copies of papers are only recoverable when used as court exhibits, or when furnished to the court or to opposing counsel. The amount not being allowed as a taxable cost represents a cost that had to be incurred during discovery and which is properly charged to the client, but simply is not a recoverable cost under § 1920(4).

### F.

■ Finally, the court turns to whether the debtor may recover under 28 U.S.C. § 1920(4), as a fee for "papers necessarily obtained for use in the case," the $3,000 cost of an appraisal report of the debtor's property produced by the debtor's expert appraiser, William C. Harvey & Associates, for use at trial. Section 1920(4) has been given a broad interpretation to include a variety of items produced as exhibits at trial such as "maps, charts, graphs, photographs, motion pictures, photostats and kindred materials when necessarily obtained for use in the case." *Water's Edge,* 135 F.R.D. at 137 (Ellis, J.) (original source omitted); *see also In re Air Crash Disaster,* 687 F.2d at 631 (noting that items such as computer expenses, demonstration models, maps, aerial photos, scientific survey of oil wells, technical drawings, and in the case, transcripts of flight recorder tape, have been allowed as costs under the provision); 10 Moore's Federal Practice § 54.103[d], at 54–191 & n. 71; 10 Charles A. Wright et al., Federal Practice and Procedure § 2677, at 360–369. Judge Ellis noted, however, that the discretion given to judges to tax costs should be "sparingly exercised with reference to expenses not specifically allowed by statute." *Water's Edge,* 135 F.R.D. at 137 (quoting *Farmer v. Arabian American Oil Co.,* 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964)). Additionally, Judge Ellis noted that only the costs of actually making the exhibit are properly taxed as costs; while the costs related to substantively putting the exhibit together—in that case, the production costs

---

**13.** The debtor asserts that this amount is broken down as follows:

| | |
|---|---|
| Photocopies, documents produced by Newell | $ 294.00 |
| Photocopies, documents produced by Newell | $ 496.38 |
| Photocopies, documents produced by Newell | $ 41.50 |
| Labeling of documents | $ 220.17 |
| Photocopies, Trial Exhibits | $1,175.00 |

of a video tape—are not recoverable. *Id.* at 138; *see also Air Crash Disaster,* 687 F.2d at 631 ("the expense of an expert's research and analysis in preparing for trial, as distinguished from producing an exhibit, is not a recoverable cost").

The court accordingly will not allow as costs the $3,000 the debtor paid the appraiser for his report. That sum clearly represents, not the direct costs of assembling and producing an exhibit, but primarily compensation to the appraiser for the time, research and analysis that went into the formulation of his opinion of value. Not only was plaintiff's exhibit 95 not introduced into evidence at trial,[14] but it had no independent evidentiary value apart from the expected opinion testimony of the appraiser. By itself, it was simply hearsay, and was admissable, if at all, only to illustrate the analytical process employed by the appraiser in arriving at his estimate of value. The court has no information as to the cost of producing the physical report—in the sense of typing, reproduction and binding costs—as opposed to the expert's time arriving at the opinion of value set forth in the report. Rather than speculate, the court will simply disallow the claimed cost of preparing the report in toto.

## III.

The court now briefly addresses Newell's motion for release of his appeal bond. The bond, in the amount of $20,000, was posted by Newell as a condition of a stay pending appeal of this court's judgment invalidating his lien against the debtor's property. Its purpose was to protect the debtor against delay damages arising from the stay and to ensure that costs awarded would be paid in the event the debtor prevailed on the appeal. Now that Newell has voluntarily withdrawn his appeal, there is no further need to provide security for the debtor other than to ensure that costs that are or could be awarded are paid.[15] Other than the costs set forth in the bill of costs, the debtor represents in its opposition to the motion to release the appeal bond that it is seeking "nearly $1,000 in appeal related costs." The court believes that Newell's appeal bond properly serves as security not only for the costs incurred in this court, but also for costs sought at the appellate level. *Page v. A.H. Robins Co.,* 85 F.R.D. 139, 139–40 (E.D.Va. 1980) (Warriner, J.) (noting that an appeal bond provides security for any costs awarded to the prevailing party). Accordingly, the court will order that Newell's bond be returned to him, less any registry fees due the clerk and less the $3,782.79 in costs allowed by this court, which the court will direct be paid to counsel for the plaintiff, and less $1,000 to be retained by the clerk pending the taxing of costs incurred in the District Court. Once those costs are determined, the balance of the bond, if any, may be released.

## IV.

A separate order will be entered consistent with this opinion allowing costs in the amount of $3,782.79; directing payment of that sum to counsel for the plaintiff from the appeal

14. The appraisal was obtained by the debtor because the debtor, to make a prima facie case on the fraudulent conveyance cause of action, had to prove the fair market value of the property in order to show that the recording of the $3 million deed of trust rendered the debtor insolvent. When Newell conceded at trial that no more than $1 million of his claim was secured, the value of the property became a moot issue.

15. The debtor asserts in its opposition to the release of the bond that such release is premature for two reasons. First, it says that because there has never been a formal order lifting the stay pending appeal, the debtor is unable, even now, to close on a sale of its property because of the continuing cloud on its title. The problem with this argument is that Newell has *dismissed* his appeal, and the stay imposed was specifically a stay *pending* appeal. The court is of opinion that once the appellant voluntarily dismisses an appeal, any "stay pending appeal" expires by its very terms, and that such termination is self-executing and does not require further order of the court (although, obviously, the debtor is free to seek one). Additionally, the debtor argued at the hearing that the appeal bond should remain in place while the debtor pursues its own appeal to the Fourth Circuit from the adverse ruling on its cross-appeal. However, the bond was posted solely to protect the debtor against Newell's appeal, not to facilitate the debtor's cross-appeal. As to the issues raised by the cross-appeal, Newell was the prevailing party both at trial and on appeal before the District Court. The debtor has cited to no authority, and the court is aware of none, that would require a prevailing party to post a bond for the benefit of the losing party.

bond posted by Newell; and directing that the balance of the bond, less registry fees due the clerk and $1,000 to be retained as a reserve, be released to Newell.